**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| CHARLES LEE H.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.: 1:25-cv-00225-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Plaintiff Charles Lee H.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of his disability claim. This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order.

## I. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or

reversing it, the Court may not substitute its own judgment for the ALJ's judgment. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson,* 95 F. 4th at 1200.

## II. DISCUSSION

Plaintiff alleges disability beginning in October 2015, when he was struck by a vehicle and suffered a left tibial plateau fracture. Eight years later, Plaintiff underwent a total left knee replacement. At step two of the sequential process, the ALJ found that Plaintiff had several severe impairments, including degenerative joint disease of the left knee from the motor vehicle accident, status post total knee arthroplasty, as well as depressive mood disorder, cognitive deficits, and alcohol use disorder. AR 23. The ALJ nevertheless determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work throughout the relevant period. AR 25-32. Although Plaintiff could no longer perform his past relevant work, the ALJ concluded at step five of the sequential process that he was not disabled because other jobs existed in significant numbers in the national economy that he could perform. AR 32-34.

Plaintiff challenges that determination on a single ground: he argues that the ALJ erred by applying one RFC to the *entire period* under review despite the progression of his knee condition, his December 2023 knee replacement, and his improvement following surgery. Pl.'s Br. at 5-6 (Dkt. 14). According to Plaintiff, those circumstances required the ALJ to consider whether his functional capacity differed before and after surgery – and in particular, whether he was disabled during some earlier portion of the claimed period – even if his condition later improved. *Id*.

Defendant responds that the ALJ did not err by assessing a single RFC for the entire period at issue. According to Defendant, the fact that Plaintiff underwent knee replacement surgery, and improved afterward, does not itself establish that his functional limitations were materially greater before surgery or that he was disabled during any earlier period. Def.'s Br. at 3-4 (Dkt. 18). Rather, Defendant maintains that the ALJ considered Plaintiff's knee condition over the full period and reasonably concluded that the same RFC applied throughout, relying in part on minimal objective findings, conservative treatment, Plaintiff's delayed pursuit of treatment, and his ability to work for several years after the alleged onset date (but before his surgery). *Id*. Thus, Defendant argues that substantial evidence supports the ALJ's assessment of a single RFC, despite Plaintiff's December 2023 knee replacement and subsequent improvement. *Id*.

The Court agrees with Defendant that substantial evidence supports the ALJ's assessment of a single RFC for the relevant period. As explained below, Plaintiff's reliance on the fact that his knee condition changed over time does not establish otherwise.

Where, as here, a claimant's impairments do not meet or medically equal a listed impairment, the ALJ must assess the claimant's RFC based on all relevant medical and other evidence in the record. *See* 20 C.F.R. § 416.920(e); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222-23 (9th Cir. 2009) ("Between steps three and four [of the sequential process], the ALJ must, as an intermediate step, assess the claimant's RFC."). The RFC represents the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1).

Plaintiff's challenge to that assessment hinges on *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021). *See* Pl.'s Br. at 5-6 (Dkt. 14). There, the claimant alleged disability arising principally from severe mental health symptoms following the deaths of his fiancée, mother, and grandmother within a short period. His symptoms varied over the ensuing years and eventually improved substantially. *Id*. at 1110-12. In evaluating the claim, however, the ALJ focused largely on the claimant's functioning at the time of a later hearing and on evidence of improvement during the latter portion of the claimed disability period, without adequately considering evidence that his symptoms had been considerably more severe earlier. *Id*. at 1111-14. The Ninth Circuit held that approach was error, emphasizing that symptoms – particularly those associated with mental health conditions – may fluctuate over time and that later improvement does not necessarily establish a claimant's ability to work during an earlier period. *Id*. at 1115-16 (concluding that ALJ erred in discrediting certain medical opinions as unreliable "because the [ALJ] did not adequately consider the progression of [the claimant's] symptoms over time in making her credibility determinations."). The relevant inquiry, therefore, was not simply

how the claimant functioned by the end of the claimed period, but whether the evidence demonstrated disability during an earlier qualifying period notwithstanding his subsequent improvement.

Relying on *Smith*, Plaintiff essentially argues the same temporal distinction should have been made here. He emphasizes that his knee condition culminated in a total knee replacement in December 2023 and that the ALJ himself recognized improvement following surgery. Pl.'s Br. at 5 (Dkt. 14). From those facts, Plaintiff reasons that a single RFC cannot adequately describe both his pre- and post-operative functioning, stating:

> The ALJ never directly clarifies whether this RFC represents pre-operative or post-operative functioning. If this is reflective of pre-operative functioning, then it seems implausible (to say the least) that knee replacement would be medically supported. On the other hand, if this is reflective of post-operative functioning, then the ALJ failed to articulate Plaintiff's function in the years prior to knee replacement surgery.

*Id*. at 6. He in turn maintains that the ALJ was required, at minimum, to consider whether he experienced a distinct period of disability before his knee replacement rather than simply apply one RFC across the entire period at issue. Plaintiff's position, and related reliance on *Smith*, is not persuasive.

As an initial matter, there is some debate about whether *Smith* applies in this context at all. *Smith* arose in the mental health context, where the Ninth Circuit emphasized that symptoms may fluctuate over time and that "[c]ycles of improvement and debilitating symptoms are a common occurrence." 14 F.4th at 1115. That concern is less obvious here, where Plaintiff challenges the ALJ's assessment of a physical

impairment – his left knee condition – and relies principally on his improvement following a discrete surgical intervention. Courts within the Ninth Circuit have questioned *Smith's* application outside the mental health context. *See Lachner v. Kijakazi*, 2023 WL 8699011, at *10 (E.D. Cal. 2023) (citing *Wendi M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 315519, at *9 (D. Or. 2023) ("Plaintiff challenges the ALJ's consideration of her physical conditions, and the Court does not believe that *Smith* applies here.")); *Michael Don J. v. O'Malley*, 2024 WL 4274988, at *2 (D. Idaho 2024) (questioning *Smith's* application where the claimant challenged the evaluation of physical rather than mental health conditions).

But the Court need not decide whether *Smith* is confined to the mental health context. Even assuming its underlying principle applies to this case, *Smith* does not establish error simply because Plaintiff's knee improved following surgery. Rather, *Smith* turns on whether the ALJ adequately considered the claimant's functioning over time, including evidence that the claimant may have experienced materially greater limitations during an earlier portion of the claimed disability. The ALJ did that here.

The ALJ considered Plaintiff's functioning before his December 2023 knee replacement. AR 26-29. In assessing Plaintiff's RFC, the ALJ acknowledged Plaintiff's longstanding knee complaints, but observed that he did not seek treatment for several years after the alleged onset date and that, when he eventually did, examinations generally revealed mild or minimal objective findings. AR 31. The ALJ also considered Plaintiff's conservative treatment and his ability to continue working for several years after his alleged onset date. AR 26. To be sure, although Plaintiff's earnings did not rise

to the level of substantial gainful activity, Plaintiff actually earned more in 2016, 2018, 2019, 2020, and 2021 than he had during the two years preceding his October 2015 injury. AR 22. At the same time, the ALJ recognized that diagnostic imaging eventually revealed an unresolved prior fracture that required treatment, culminating in a total knee replacement, and that Plaintiff improved following surgery. AR 31. From this, it is clear that the ALJ did not infer Plaintiff's preoperative capabilities from his postoperative improvement. He considered the evidence bearing on Plaintiff's functioning before surgery and concluded that it supported a reduced range of light work, including a limitation to only four hours of standing and walking during an eight-hour workday. *Id.*

Plaintiff's more focused argument in reply does not change the analysis. There, he emphasizes the period from March 2022 through December 2023, during which imaging documented a chronic tibial plateau fracture and his treatment progressed from injections that provided only temporary relief to eventual knee-replacement surgery. Pl.'s Reply Br. at 2 (Dkt. 20). The evidence Plaintiff cites reflects a persistent knee condition and an escalating course of treatment; but it does not establish that, during that period, Plaintiff had greater work-related functional limitations than those incorporated into the RFC. The issue is not simply whether Plaintiff's condition worsened or eventually required surgery, but what Plaintiff was capable of doing despite that condition. On that point, the ALJ considered the preoperative evidence in determining Plaintiff's functional capacity during that period.

These circumstances paint a different picture than the one presented in *Smith*. Courts have similarly distinguished *Smith* where the ALJ actually considered evidence

from the allegedly more limiting period rather than allowing later improvement to obscure it. *See Lachner v. Kijakazi*, 2023 WL 8699011, at *10 (E.D. Cal. 2023) (distinguishing *Smith* because the ALJ "did consider evidence of Plaintiff's symptoms prior to her surgical procedures"); *Joseph E. v. Bisignano*, 2026 WL 1508708, at *5 (C.D. Cal. 2026) (distinguishing *Smith* where the ALJ considered the longitudinal record and there was no improperly rejected evidence demonstrating materially greater limitations during another portion of the relevant period). So too here. Plaintiff's knee replacement and subsequent improvement do not themselves establish an earlier period of disability, and *Smith* did not require the ALJ to formulate a separate RFC simply because Plaintiff's condition and treatment evolved over time.

At bottom, substantial evidence supports the ALJ's RFC determination. Plaintiff has not shown that his changing knee condition resulted in greater functional limitations than those the ALJ assessed or otherwise required a separate RFC for any portion of the relevant period. Accordingly, remand is not warranted.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint (Dkt. 1) is DENIED, and this action be DISMISSED in its entirety, with prejudice.

DATED: September 21, 2026

______________________________
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge